MILES MITCHELL vs. MARINA MITCHELL and her children.

The statute in reference to binding out apprentices, C. C. P., sec, 484, must be construed as if it read, "All orphans, the profits of whose estates will not support them, and who are likely to become chargeable upon the County, or whose moral or physical condition requires it, shall be bound out."

When an application is made to a Probate Judge to bind out children as apprentices, *prudence* requires that they should be present, and it is his duty to observe such *prudence*, unless there be some sufficient excuse for omitting it.

This was a proceeding originally commenced before the Probate Judge of HERTFORD County upon the application of Miles Mitchell to have apprenticed to him several minor children, viz., Alfred, Dick, Thomas and Catherine Mitchell, children of Marina Mitchell. They were born in slavery, the property of Miles Mitchell, the applicant. After the emancipation of the slaves, they were bound to him by an officer of the United States Government and the County Court of Hertford, without notice to the mother. Previous to these proceedings they were discharged from custody by a writ of *habeas corpus*, and thereupon a motion was served upon the mother and the children, and these proceedings were instituted. The motion was signed by the Attorney of the applicant, and served by the sheriff of the county. Upon the day set apart for the hearing, neither the mother nor the children were present, having been prevented from attending by the inclemency of the weather. The Probate Judge made an order apprenticing the children, above named, to Miles Mitchell, their former master. From this order there was an appeal to the Superior Court, and the matter was heard before Pool, Judge, at Fall Term, 1871. It appears in evidence that the eldest of the children had been hired out by the mother, for the present year, for $60, and the youngest, a

girl, was living in the family of a respectable gentleman, a member of the bar. The other two were living with the mother, aiding in cultivating a farm upon rented land, and with a hired team, and had made an average crop, for a person of her condition in life in that section of country. She is as industrious and frugal, and takes as good care of her children, as colored mothers generally do. All of the children together could have been hired out at $12,50 per month. The mother had not sent any of them to school. The children were fatherless. It was in evidence that the mother was living on rented land, belonging to one William Mitchell, who furnished a horse and sold her provisions. The landlord was to have one half of what was raised on the farm, and at the end of the year she would be in debt to the said Mitchell about $100 for provisions, which it would take the most of her part of the crop to satisfy. It was in evidence that Miles Mitchell was a kind and humane man, and in every respect a fit and suitable person for a master of apprentices. Upon this state of facts, his Honor affirmed the order of the Probate Judge, from which there was an appeal to the Supreme Court.

*David A. Barnes* and *Batchelor*, for the appellants.
*Smith*, for the appellee.

READE, J. In *ex parte* Ambrose, Phil. R., it is said that notice to persons to be bound out, or to their friends, is indispensable, and that it is prudent to have them present in person before the Court.

Notice was given in the case before us, but it is objected that the notice ought to have been issued by the Judge of Probate, and not by the person who was seeking to have the orphans bound to him; that they were not obliged to respond to such notice. There is certainly some force in the objection, but we do not think it controlling in this case; because it is stated that the notice was sued out of the Court of Probate,

and that it was served by the sheriff. Holding the notice to háve been sufficient, still some reason ought to have been given why the Judge of Probate did not observe the "prudence" of having the orphans actually present before him ; for, it is not to be tolerated that an officer of the law shall fail to observe what is *prudent*, any more than what is *necessary*, without a sufficient excuse. Here the only excuse is, that they were notified and did not attend. But then the case states that both they and their counsel were prevented from attending by the inclemency of the weather. So the Judge of Probate ought, of his own motion, to have continued the case until he could have taken the necessary steps to have them before him. The children ought to be present in order that the Judge of Probate may, from personal inspection, as well as from testimony, judge of their condition and of their wants, and of their capacity for any particular service, and of the terms which he ought to make with the master on their behalf, and also in order that the public may see the children, so that there may be competition among applicants for their services, as no one would like to take an apprentice without seeing the person. There may be circumstances to excuse the binding in the absence of the children, but none appears in this case. In *habeas corpus* cases and inquisitions of lunacy, the person is required to be present.

But upon the supposition that the proceedings were regular, the main question is, were these children proper subjects to be bound out? If they were, then most of the fatherless children in the State, white and colored, are liable to be taken from their mothers and bound out.

The facts are, that the mother and her two youngest sons work rented lands and make average crops. "She is as industrious and frugal and takes as good care of her children as colored mothers generally do. Her youngest child, a daughter, had a good home with a respectable gentleman, and her oldest son was hired out at $60 a year. And all her children would

hire for $12.50 a month." And there is no allegation of mis-
behaviour of her or of her children. There has been no pre-
sentment of the grand jury, and no complaint from any per-
son except from him who wants their services. It is not sur-
prising that he should want them bound, because thereby he
would get services worth $150 a year *now*, and constantly in-
creasing in value. For these services he would make no re-
turn to the mother, who has had the burden of supporting
them, and no return to the children, except such education as
they can get at the public schools. This would seem to be
great injustice to the mother and great hardship upon the
children, to say nothing of the impolicy of breaking up the
domestic relations when there is no public necessity for it.

The statute which is said to authorize this apparent evil is
as follows:

" The Judges of Probate in their respective counties shall
bind out as apprentices, all orphans whose estates are of so
small value that no one will educate and maintain them for
the profits thereof."

It must be admitted that the language of the statute is com-
prehensive, and if understood literally, will embrace almost all
the orphan children in the State. Since the wreck of fortunes
by the war, it is a rare case where a fatherless child can be
educated and maintained out of the profits of its estate alone.
But still, when the family is kept together and industry and
economy are added to a small income from property, the
children may be provided for in the domestic forum. The
public does not become interested to break up these relations
unless the children are likely to become chargeable upon the
parish, or unless their moral or physical condition requires a
change. This has been the spirit of all our former legislation
upon the subject, and in this spirit we think our present
statute, C. C. P., S. 484, must be construed. It must be con-
strued as if it read, all orphans, the profits of whose estates
will not support them, and who are likely to become charge-

able upon the county, or whose moral, mental or physical condition require it, shall be bound out, &c. Such is not the case before us.

There is error. This will be certified to the end the children may be discharged.

